UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
:
AQUADRILL US GULF LLC,                                     :
AQUADRILL GULF OPERATIONS VELA                             :   **ORDER AND OPINION**
LLC, and AQUADRILL GULF OPERATIONS                         :   **GRANTING MOTION TO**
AURIGA LLC,                                                :   **CONFIRM AND DENYING**
                                                           :   **MOTION TO VACATE THE**
                                   Petitioners,            :   **ARBITRATION AWARD**
            -against-                                      :
                                                           :   21 Civ. 8156 (AKH)
BP EXPLORATION & PRODUCTION, INC.,                         :
                                                           :
                                   Respondent.             :
---------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This case arises out of a contractual dispute and subsequent arbitration between Petitioners Aquadrill US Gulf LLC, Aquadrill Gulf Operations Vela LLC, and Aquadrill Gulf Operations Auriga LLC (collectively "Petitioners") and Respondent BP Exploration & Production, Inc. ("Respondent"). The Parties entered into three seven-year contracts (the "Contracts"), under which Petitioners provided drilling rigs and personnel to Respondent for its use in offshore drilling operations in the Gulf of Mexico. The Parties dispute the interpretation of a section in the contracts, involving changes in legislation and regulations. Under Petitioner's reading, Respondent must pay for Petitioner's tax liabilities under the Base Erosion Anti-Abuse Tax ("BEAT"), 26 U.S.C. § 59A (2017), which disallows deductions for payments from U.S. taxpayers to foreign affiliates. Pursuant to Section 10(a)(3)–(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*, Petitioner asks me to vacate the arbitral award rejecting Petitioner's interpretation, and to remand for the appointment of a new tribunal. ECF No. 1. Respondent asks me to confirm the Award. For the reasons below, the petition is denied and the Award is confirmed.

## BACKGROUND

The relevant facts are as follows. The Parties entered into three seven-year contracts (the "Contracts") pursuant to which Petitioners provided deepwater drilling rigs for Respondent's use in the Gulf of Mexico. Final Arbitral Award (the "Award") ¶ 9, ECF No. 1-1. Petitioners provided rigs to Respondent's specifications and a trained crew to operate them, for which Petitioners received an all-inclusive daily rate. *Id.* ¶ 61, 64. As relevant here, the contracts each included a provision—Section 12.6—which required Respondent to reimburse Petitioners for "cost[s] for performance of the WORK" performed by Petitioners. ECF No. 1-35, at 19; ECF No. 1-47, at 21; ECF No. 1-56, at 21–22. In relevant part, Article 12.6, as it appeared in all three Contracts, provided:

> [I]f any . . . applicable legislation, regulations, requirements or orders or the matter in which such legislation, regulations, requirements or orders are enforced or interpreted . . . are amended or otherwise changed after the CONTRACT EFFECTIVE DATE, and if such amendments or changes result in an increase or a decrease in CONTRACTOR cost for performance of the WORK (including but not limited to any changes to import duties), COMPANY shall issue a VARIATION to fully compensate the respective Party for such change in cost.

Award ¶ 105. In the latter two Contracts, the Parties added a second paragraph to Article 12.6:

> In the event that [Petitioners] conclude[] that the increased cost associated with any changes to the US Tax Code, the Jones Act or any federal regulation promulgated after the CONTRACT EFFECTIVE DATE as they impact the CONTRACT would require a substantial restructuring of [Petitioners], then [Petitioners] shall notify [Respondent] of the expected cost impact of such changes, and shall within a reasonable period notify [Respondent] of [Petitioners'] plans to mitigate the impact of such changes on [Petitioners'] costs. In such event [Respondent] may elect to exercise any rights available to [Respondent] under this Agreement, including but not limited to:
>
> > i. pay the associated increased cost to [Petitioners] in accordance with this Sub-article 12.6;
> > ii. terminate the CONTRACT for convenience in accordance with Sub-article 17.9; or
> > iii. change the locale of the WORK in accordance with Article 33.

Award ¶ 153.

After execution of the contracts, Petitioners restructured the ownership of their rigs to minimize U.S. income tax liability; this involved transferring ownership of the rigs to Swiss branches of newly-created Hungarian affiliates, which leased the rigs back to Petitioners, permitting Petitioners to deduct the lease payments from its taxable income. Award ¶ 63–64. In 2017, Congress enacted the BEAT, which imposed an alternative minimum tax on corporations that would otherwise "have the ability to reduce U.S. tax liabilities by making deductible payments to foreign related parties." 84 Fed Reg. 66968, 67008 (Dec. 6, 2019). Petitioner estimated that the BEAT would increase its annual tax liability by over $50 million dollars, and following its enactment, invoked Article 12.6, demanding that Respondent pay for the increased tax liability as a "cost for performance of WORK."

After Respondent refused the demands, Petitioner commenced an arbitration proceeding on September 23, 2019, seeking an order directing Respondent to pay the tax liabilities. *Id.* ¶ 23. Pursuant to the Contracts, each Party appointed one arbitrator, and those two jointly chose the third member and chairperson of the arbitral tribunal (the "Tribunal"). *Id.*[1]

Following consultation with the Parties, the Tribunal issued an order establishing the arbitral procedure, which allowed the parties to submit openings written briefs, witness statements, expert reports, and documentary evidence, and afforded both sides an opportunity to review the materials submitted by their counterparties. *Id.* ¶¶ 27–33. Accordingly, prior to the evidentiary hearing, Petitioner submitted: (i) a 30-page memorial, accompanied by an 18-page appendix and dozens of pages of witness statements; (ii) a 61-page reply memorial, accompanied

---

[1] Petitioner argues that it challenged the appointment of the Respondent's nomination of Lucy Greenwood, on the grounds that she had not properly disclosed a prior arbitration that involved one member of counsel to Respondent in both matters. Petition to Vacate the Arbitral Award ("Petition") ¶ 31, ECF No. 4. Whether Petitioner made such a challenge, and whether it was improperly rejected, are immaterial here because Petitioner does not seek to vacate the Award for arbitrator partiality, FAA § 10(a)(2).

3

by a 32-page expert report, and dozens more pages of witness statements from 4 witnesses; (iii) 174 evidentiary exhibits; and (iv) 108 legal exhibits. *See id.* ¶¶ 27, 32.

The Tribunal held an evidentiary hearing from March 1 to 4, 2021, during which the Parties made oral arguments, examined witnesses, and responded to questions from the Tribunal. *See generally* ECF Nos. 1-10, 1-11. At the conclusion of the hearings, the Tribunal advised the Parties that if they believed any due process violation or issue had arisen, they should file a motion to that effect; neither Party filed such a motion. ECF No. 1-11 at 1252:9–23.

Following the hearings, the Parties additionally filed post-hearing briefs and reply briefs on April 15, 2021 and May 6, 2021, along with a list of "what matters [the Tribunal had] to deal with in the Award." Award ¶¶ 52, 54, 81, 85. The Tribunal inquired whether the Parties had any additional proofs or witnesses to submit; Petitioner confirmed that it had no additional evidence to submit. *Id.* ¶¶ 56–57. Petitioner sought leave to make three points regarding Respondent's Comments on Petitioners' Costs Submission, which leave the Tribunal granted, along with reciprocal allowance for Respondent to reply. *Id.* ¶ 57.

The Parties submitted five issues for resolution, the first of which, was whether Respondent was liable for the variation in Petitioner's tax liabilities under Section 12.6. *Id.* ¶ 85(1). If the Tribunal found that Respondent was so liable, the remaining issues concerned the interpretation of various other contractual provisions implicated by that obligation. *Id.* ¶ 85(2)–(5). However, the Tribunal did not reach the remaining issues because it concluded that under both New York and English law, "cost for performance of the WORK" referred to Petitioner's "operational responsibilities owed to Respondent once the rig was mobilized to the Gulf of Mexico." *Id.* ¶ 115.

The Tribunal began its analysis with a summary of the Parties' respective arguments, positions, and evidence. *Id.* ¶¶ 75–84. In reaching its conclusion that Respondent was not liable for the increased tax liabilities caused by the BEAT, the Tribunal employed ordinary principles of contract interpretation, looking to surrounding text and the definition of WORK as evidence of "the operational thrust of Article 12.6" *Id.* ¶¶ 112–16, 148–49. It also considered how Section 12.6 should be construed in accordance with and in light of other provisions providing the Parties' respective obligations and rights. *See, e.g.*, ¶¶ 117–42; 150–60.[2] Petitioners ask me to vacate the Award, and to remand for the appointment of a new Tribunal. ECF Nos. 1, 4. In its opposition, Respondent asks me to deny the petition and to confirm the Award. Opposition to Petition, ECF No. 20.

## DISCUSSION

I.  Legal Standard

"Congress enacted the Federal Arbitration Act ("FAA")[, 9 U.S.C. § 1 *et seq.*,] to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contract.'" *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The Act makes contracts to arbitrate "valid, irrevocable, and enforceable," so long as their subject involves "commerce." FAA, § 2. The Act supplies a streamlined mechanism for enforcing arbitration awards—a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. *Hall*, 552 U.S. at 582; FAA §§ 9–11.

A court's review of an arbitration award is "severely limited in view of the strong

---

[2] The Tribunal also considered whether the second paragraph of Article 12.6, appearing only in the latter two Contracts, altered its conclusion that Respondent was not liable for the increased tax liabilities; concluding that it did not. Award ¶¶ 88, 153–72.

deference courts afford to the arbitral process." *Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018) (citation omitted). This limitation prevents frustration of the "twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (citation omitted). Therefore, under the Federal Arbitration Act, the "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

Section 9 of the FAA provides that "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall*, 552 U.S. at 582 (quoting 9 U.S.C. § 9). Under Section 10(a), a court may vacate an arbitration award in four situations:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

II. Analysis

Petitioners seek to vacate the Award on two grounds—arbitrator misconduct under Section 10(a)(3), and arbitrator exceeding scope of powers under Section 10(a)(4).

A. Arbitrator Misconduct

6

Petitioner argues that the Tribunal relied upon at least seven "new arguments" that neither party advanced, including new arguments in the Award, therefore depriving Petitioner of an opportunity to respond and prejudicing its rights, as well as making "repeated efforts to bolster [Respondent's] argument." Petition to Vacate Arbitral Award ("Petition") ¶¶45–46, 117–19, ECF No. 4.

"Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997).  Misconduct must amount to a denial of fundamental fairness of the arbitration proceeding.  *Roche v. Local 32B-32J Serv. Empls. Int'l Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991).  "Arbitral misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Baumann Bus Co. v. Transp. Workers Union Of: Am., Local 252, AFL-CIO*, No. 19-CV-02980, U.S. Dist. LEXIS 53023, at *13–14 (Mar. 22, 2021) (quoting *In re Cragwood Managers, L.L.C. (Reliance Ins. Co.)*, 132 F. Supp. 2d 285, 287 (S.D.N.Y. 2001)).  "To show arbitral misconduct, 'the challenging party must show that his right to be heard has been grossly and totally blocked, and that this exclusion of evidence prejudiced him.'" *Id.* (quoting *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 30–31 (S.D.N.Y. 2017)).

Here, Petitioners points to nothing in the arbitral proceedings to suggest that they were denied fundamental fairness.  Petitioners fail to show that their right to be heard was "grossly and totally blocked," or that they were *prevented* from offering evidence.  *Oracle Corp.*, 276 F. Supp. 3d at 30–31.  Petitioners endeavor to make such a showing by characterizing the Tribunal's analysis as "new arguments," and then arguing that the late-stage reliance on these "new arguments" deprived it of an opportunity to provide evidence to rebut the Tribunal's

7

findings. Petitioners cite the Tribunal's statement that "no party drew the attention of the Tribunal to any specific proposed action that might implicate the Seadrill Group's income taxes and Article 12.6. Thus, the Tribunal has seen no material evidence that changes in the U.S. Tax Code were related to any specific proposals for changes in U.S. income taxes that might increase the cost to [Petitioners] for performance of the WORK." Petition ¶ 97 (quoting Award ¶ 168) (emphasis deleted). Petitioners argue that Respondent never argued that a specific proposal was necessary to justify Petitioners' concerns, and that if Petitioners had been given the opportunity to respond, they would have pointed out why the record "unambiguously demonstrate[d] that protection from tax changes was a. . . goal during the negotiations." *Id.* ¶ 98.

Petitioners mischaracterize the Tribunal's analysis. The Award's reasoning does, in fact, track arguments made by Respondent. Although Petitioners begin by identifying the seven "new arguments," the bulk of their Petition is devoted to attacking the Tribunal's interpretation of the contract, and explaining in laborious detail why and how the Tribunal reached the wrong result. Even assuming the Tribunal did divert from the Parties' arguments, however, vacatur would not be warranted under Section 10(a)(3) because "[t]he Tribunal's determination was . . . founded on basic tools of contract interpretation, the application of which courts usually will not review." *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice BmgH*, 840 F. Supp. 2d 703, 713–14 (S.D.N.Y. 2011); *see also TiVo Inc. v. Goldwasser*, 560 Fed. App'x 15, 21 (2d Cir. 2014) (affirming award even though Tribunal's reasoning "did not wholly track arguments . . ."). Respondent's arguments to vacate the Award under Section 10(a)(3) are without merit.

B. Arbitrator Exceeded Powers

Petitioners argue that the Tribunal exceeded its powers because it inaccurately

defined the dispute, engaged in flawed and unlawful reasoning, ignored the negotiation history of the Parties, added and excised terms contrary to law, and ignored the law on superfluousness. Petition ¶¶ 57–115.

The Second Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)], in order to facilitate the purpose underlying arbitration:  to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009) (citation omitted).  It is not enough "to show that the panel committed an error -- or even a serious error.  It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citation omitted).

Under § 10(a)(4), the proper inquiry is therefore "whether the arbitrator's award draws its essence from the agreement to arbitrate . . . .  If the answer to this question is yes, . . . the scope of the court's review of the award itself is limited." *ReliaStar*, 564 F.3d at 85–86 (citation omitted).  The court does "not consider whether the arbitrators correctly decided the issue" and should "uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." *Id.* at 86 (citation omitted).

Here, again, Petitioners unartfully endeavor to shoehorn their disagreement with the Tribunal's result into one of the limited grounds for vacatur.  The Parties submitted the issues for resolution by the Tribunal, and the Tribunal decided one of those issues.  It therefore unequivocally decided an issue within the scope of the agreement, and the nearly forty pages of the Tribunal's analysis, employing traditional tools of contract interpretation, offers more than a

colorable justification for the outcome it reached. Accordingly, I cannot vacate the Award under Section 10(a)(4).

In sum, Respondent fails to meet its high burden of establishing grounds to justify vacatur under Sections 10(a)(3) or (4). I am therefore compelled under Section 9 to confirm the Award. *Hall*, 552 U.S. at 582.

## CONCLUSION

For reasons described above, the petition to vacate the award is denied, and Respondent's request to confirm the award is granted. The Clerk shall terminate the motion (ECF No. 1).

SO ORDERED.

Dated: November 15, 2021            /s/ Alvin K. Hellerstein
New York, New York            ALVIN K. HELLERSTEIN
           United States District Judge